UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
WARREN BALGLEY,                                             :
                                                            :
                Plaintiff,                    :
                                                            :
          -v-                                       :
                                                            :
                                                            :
NEW YORK CITY HEALTH AND HOSPITALS                          :
CORPORATION; ANGELA BROWN,                                  :
  individually; and JAMES ACERO, individually,              :
                                                            :
                Defendants.                   :
                                                            :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 10, 2017

14-cv-9041 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

      On November 13, 2014, plaintiff brought this action under the Americans with Disabilities Act, 42 U.S.C. § 12101 et. seq. ("ADA") and the New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101 et seq. (ECF No. 1.)  Plaintiff alleges his former employer and supervisors discriminated against him due to his disability and retaliated against him for engaging in protected activity. (ECF No. 2.)  Defendants have moved to dismiss.  (ECF No. 22).  Plaintiff's opposition to the motion to dismiss concedes that he fails to state a claim of discrimination under the ADA but argues that his claim of retaliation survives. (ECF Nos. 25.)

      On March 10, 2016, this Court converted defendants' motion to dismiss to a motion for summary judgment.  (ECF No. 29.)  For the reasons set forth below, that motion is GRANTED.

I.      FACTUAL BACKGROUND

The following facts are undisputed unless otherwise indicated.

Plaintiff began working for defendant New York Health and Hospitals Corporation ("HHC") as a resident in psychiatry in 1992. (Def. Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1") ¶ 3, ECF No. 38.) As set forth in more detail below, his claims relate to two separate medical conditions and alleged events associated therewith. First, he was diagnosed in 2009 with Chronic Obstructive Pulmonary Disorder ("COPD"). (Compl. ¶ 23, ECF No. 2). Second, in May 2013, he broke an elbow in a non-work-related incident. (Id. ¶ 31.) As a result of his broken elbow, he requested and was granted several leaves of absence. (Def. 56.1 ¶ 32.) While on one of those leaves, he requested an additional form of leave, "HHC 3.5 Discretionary Extended Medical Leave" ("Discretionary Extended Leave"). (Id. ¶ 42). This request was denied. (Id. ¶ 44.) Several months later, he was denied further extensions of the leave already granted. (Id. ¶ 50.) In May 2014, he was terminated; this action followed. The more detailed version of these events is set forth below.

Plaintiff's work was formally evaluated on at least two occasions between 2009 and his termination. His performance evaluation for July 2011 through July 2012 stated that he "Need[ed] Improvement." (Def. 56.1 ¶ 7.) In October 2012 plaintiff attended a counseling session "concerning his low productivity and the quality of his work as reflected on his performance evaluations." (Id. ¶ 9.) Plaintiff

2

was evaluated again in December 2012, and he received a "Satisfactory" rating. (Id. ¶ 10.)

Plaintiff alleges that on or about October 19, 2012, defendant Brown told him that "she had been trying to get rid of him for years." (Compl. ¶ 26.) Defendants dispute that Brown made this statement. (Ans. ¶ 26, ECF No. 14.) On October 23, 2012, plaintiff filed a charge of religious discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Def. 56.1 ¶ 23, 24.) The next day plaintiff met for a discussion of his performance evaluations with defendant Acero, who, plaintiff alleges, threatened him by saying he killed people in Vietnam and had "learned a lot of things in Vietnam about how to control people, both physically and emotionally," and that plaintiff should work somewhere else. (Compl. ¶ 29.) Defendants dispute that defendant Acero made these statements. (Ans. ¶ 29.) Plaintiff withdrew the EEOC religious-discrimination charge one day after filing it, which was the same day as his meeting with Acero. (Def. 56.1 ¶ 25.)

On May 9, 2013, plaintiff broke his elbow in a non-work-related incident. (Id. ¶¶ 26-29.) Plaintiff requested and was granted paid Family Medical Leave Act ("FMLA") leave from May 14 to June 24, 2013, (id. ¶ 34), which was then extended to July 21, 2013, at plaintiff's request, (id. ¶ 35). He also requested and received paid non-FMLA medical leave for the period from July 21 to August 26, 2013, (Id. ¶ 36); this leave was extended at his request from August 26 to October 20, 2013, (Id. ¶ 37), and from October 20 to November 14, 2013, (Id. ¶ 38). Finally, plaintiff

requested and was granted an additional extension of his paid non-FMLA medical leave for the period from November 14, 2013, to January 6, 2014. (Id. ¶ 39.)

In November 2013, plaintiff applied for "HHC 3.5 Discretionary Extended Medical Leave" ("Discretionary Extended Leave"). (Def. 56.1 ¶ 42.) At the time, HHC company policy stated that to qualify for this type of leave, "[e]mployees must have exemplary performance evaluations for their employment tenure. The nature and the extent of illness must be catastrophic. Please note that this type of leave is 'discretionary' and must meet the set forth criteria to be considered for such leave." (Id. ¶ 43.) Plaintiff's request for Discretionary Extended Leave was denied on November 21, 2013. (Id. ¶ 44.) He then filed an additional request for Discretionary Extended Leave, which was denied on December 23, 2013. (Pl. Response to Def. 56.1, ("Pl. 56.1") ¶ 26; ECF No. 38.)

On January 7, 2014, plaintiff began Sick Leave of Absence Coverage ("SLOAC"). The SLOAC leave for the period up to February 28, 2017; plaintiff then requested an extension of the leave, and such extension was granted to April 29, 2014. (Def. 56.1 ¶ 40.) Plaintiff subsequently took unpaid non-SLOAC leave until May 8, 2014. (Id. ¶ 41.) In all, plaintiff requested and was granted medical leave eight times and was on medical leave for almost a year after he broke his elbow. (Id. ¶ 33.)

On March 11, 2014, HHC issued plaintiff a letter informing him that he "was no longer eligible for an extension of [his] . . . leave of absence." (Id. ¶ 50.) Plaintiff filed an EEOC charge (which he had signed in January) the same day alleging

4

disability discrimination (but not retaliation). (Def. 56.1 ¶¶ 46, 47.) In accordance with HHC's Personnel Rules and Regulations, because plaintiff had been absent for over a year for a non-work related injury, i.e., his broken elbow, his employment was terminated on May 12, 2014. (Id. ¶ 51.)

Plaintiff filed this action on November 13, 2014. (ECF No. 2.) He has conceded that he cannot state an employment discrimination claim under the ADA, (Def. 56.1 ¶ 18), and he has abandoned his initial allegation that his termination was unlawful under the ADA or NYCHRL, (see Pl. Brief in Opp., ECF No. 39.) His remaining claims are for retaliation under the ADA and for discrimination under the NYCHRL based on the denials of his request for Discretionary Extended Leave.

II.     PRINCIPLES OF LAW

A.     Summary Judgment

Summary judgment may only be granted if the movant demonstrates, based on admissible evidence in the record, "that there is no genuine dispute at to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are "facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (stating that the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts").

In deciding whether to grant summary judgment, the Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). Once the movant has asserted facts to support the conclusion that the non-movant's claims cannot be sustained, the non-movant must set out specific facts showing a genuine issue for trial. See Fed. R. Civ. P. 56(e). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," because "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir.2010) (internal citation and quotation marks omitted). Summary judgment may be "appropriate even in the fact-intensive context of discrimination cases." Abdu-Brisson v. Delta Air Lines, 239 F.3d 456, 466 (2d Cir.2001), cert. denied, 534 U.S. 993 (2001).

B.  The ADA

In order to establish a prima facie case of discrimination under the ADA, a plaintiff must show "(a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." Brady v. Wal-Mart Stores, Inc., 531 F.3d 127, 134 (2d Cir. 2008).

6

There is no individual liability under the ADA; therefore, the federal claims against the individual defendants are dismissed, and the Court proceeds with ADA analysis for defendant New York City Health & Hospitals only. Spiegel v. Schulmann, 604 F.3d 72, 79-80 (2d Cir. 2010) (explaining that there is no individual liability under Title VII or the ADA).

   1. Relevant Law Relating to the Disability Claims

To state a claim under the ADA, a plaintiff must allege that he or she is disabled within the meaning of the statute. Brady, 531 F.3d at 134; Wernick v. Fed. Reserve Bank, 91 F.3d 379, 383 (2d Cir. 1996). Under the ADA, an individual is disabled if he or she: (1) has "a physical or mental impairment that substantially limits one or more major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." See 42 U.S.C. § 12102(1); Widomski v. State Univ. of N.Y., 748 F.3d 471, 474 (2d Cir. 2014). Major life activities are "activities that are of central importance to daily life." Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005) (quoting Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 197 (2002)). Major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

"Courts within this [C]ircuit, and the vast majority of courts elsewhere which have considered the question, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary injuries are not

7

disabled persons within the meaning of the act." <u>Dudley v. N.Y.C. Housing Auth.</u>, No. 12 Civ. 2771(PGG), 2014 WL 5003799, at *34 (S.D.N.Y. Sept. 30, 2014) (alteration in original) (quoting <u>Graaf v. N. Shore Univ. Hosp.</u>, 1 F. Supp. 2d 318, 321 (S.D.N.Y. 1998); <u>see also</u> <u>Fagan v. United Int'l Ins. Co.</u>, 128 F. Supp. 2d 182, 186 (S.D.N.Y. 2001) (stating that plaintiff's injury must have "long-term impact to qualify as a disability under the terms of the ADA"). An exception to this general rule is that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." 42 U.S.C. § 12102(4)(D).

    2. <u>Relevant Law Relating to the Retaliation Claims</u>

The ADA "prohibits an employer from retaliating against an employee for engaging in activities protected by the statute." <u>Shepheard v. NYC Corr. Dep't</u>, 360 F. App'x 249, 251 (2d Cir. 2010). To plead a <u>prima facie</u> case of retaliation under the ADA, an employee must show "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an employment action disadvantaging the plaintiff; and (4) a causal connection between the protected activity and the adverse employment action." <u>Hicks v. Baines</u>, 593 F.3d 159, 164 (2d Cir. 2010). A "causal connection between a disability and an adverse employment action" is also required to establish liability for a discrimination claim under the ADA. <u>Parker v. Sony Pictures Entm't, Inc.</u>, 260 F.3d 100, 107 (2d Cir. 2001); <u>see also</u> <u>Pearson v. Unification Theological Seminary</u>, 785 F. Supp. 2d 141,

163 (S.D.N.Y. 2011) (A "causal showing for a prima facie case" of disability discrimination is "requisite.").

### 3. Burden Shifting

"Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. If a defendant meets this burden, the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." Treglia v. Town of Manlius, 313 F.3d 713, 721 (2d Cir. 2002); see also Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006) ("ADA employment discrimination claims are subject to the familiar burden-shifting analysis established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973).").

C.  NYCHRL Liability

The NYCHRL embodies a broader conception of actionable discrimination and retaliation than Title VII and the NYSHRL. See Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 277-79 (2d Cir. 2009) (explaining that NYCHRL is not coextensive with federal and state law counterparts); Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 723 (2d Cir. 2010) ("[T]he retaliation inquiry under the CHRL is broader than its federal counterpart." (internal quotation marks omitted)). The NYCHRL's definition of "disability" is more expansive than that of

the ADA and does not require "any showing that the disability substantially limits a major life activity." Giordano v. City of New York, 274 F.3d 740, 753 (2d Cir. 2001).

However, a plaintiff claiming retaliation must still show (1) participation in a protected activity, (2) the defendant's knowledge of plaintiff's protected activity, (3) an adverse employment action against plaintiff, and (4) a causal connection between the protected activity and adverse employment action. Mayers v. Emigrant Bancorp, Inc., 796 F. Supp. 2d 434, 446 (S.D.N.Y. 2011). Additionally, a claim of disability discrimination under the NYCHRL is subject to the McDonnell Douglas burden-shifting framework. Melman v. Montefiore Med. Ctr., 946 N.Y.S.2d 27, 30 (App. Div. 1st Dep't 2012).

III.   DISCUSSION

A.   Retaliation

Plaintiff alleges that the denial of his request for Discretionary Extended Leave was retaliation for either his filing of EEOC charges or for his taking medical leave after injury his elbow. This claim fails.

On the undisputed facts before the Court, plaintiff has failed to raise a triable issue as to a causal connection between his filing of EEOC charges and any adverse employment action. See Hicks, 593 F.3d at 164. Plaintiff suggests that temporal proximity between his filing of the October 2012 charge and the denial of Discretionary Extended Leave is sufficient; it is not. He filed his October 2012 claim with the EEOC a year prior to the first denial of his leave request in November 2013. However, plaintiff admits he was approved for paid leave multiple

10

times during that year.  On these facts, the rather attenuated temporal connection breaks altogether.  As to plaintiff's second EEOC charge, it cannot logically have any causal connection as it was filed <u>after</u> the denial of his Discretionary Extended Leave request.

Plaintiff's claim that defendant retaliated for his use of approved medical leave fares no better.  "[P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . or (2) directly, through evidence of retaliatory animus[.]"  <u>Gordon v. New York City Bd. of Educ.</u>, 232 F.3d 111, 117 (2d Cir. 2000).  Plaintiff has not presented any direct or circumstantial evidence of retaliatory animus.[1]  The only fact plaintiff alleges to support causation is that the Discretionary Extended Leave request was denied after plaintiff used other forms of medical leave for which he was repeatedly approved over a period of six months—and for which he continued to be approved after the denial of Discretionary Extended Leave.  (Def. 56.1 ¶ 45.)

A gap of six months does not rule out causation.  See <u>Bucalo v. Shelter Island Union Free Sch. Dist.</u>, 691 F.3d 119, 131 (2d Cir. 2012).  However, in light of the entire record—the repeated approval of plaintiff's other leave requests (before and after his requests for Discretionary Extended Leave), the absence of facts showing disability-based animus, and the time lapse between plaintiff's requests for medical leave and the denial of Discretionary Extended Leave—plaintiff alleges insufficient

---

[1] Plaintiff incorrectly characterizes the failure of a non-defendant to mail him a form as direct evidence of retaliatory animus.  (Pl. Brief in Opp. at 12-13); <u>see</u> <u>Direct Evidence</u>, Black's Law Dictionary (10th ed. 2014) ("Evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption.").

facts to raise a triable issue as to a causal relationship. Additionally, although plaintiff alleges that he complained of discrimination on the basis of disability internally in December 2013, his Discretionary Extended Leave was first denied in November 2013, a month earlier. (Def. 56.1 ¶ 44.) Plaintiff has therefore alleged insufficient facts to allow a reasonable juror to conclude that the denial of his Discretionary Extended Leave was caused by either his use of medical leave or his December 2013 complaint.

Even if plaintiff successfully made out a prima facie case that the November 2013 denial of his Discretionary Extended Leave was in retaliation for his use of medical leave or December 2013 complaint, he fails to proffer facts to rebut defendants' showing that he was actually denied Discretionary Extended Leave because his performance evaluations were disqualifying. See Shepheard, 360 F. App'x at 251.

Once a plaintiff alleging employment discrimination under the ADA makes out a prima facie case of unlawful discrimination, "the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason" for the adverse employment action. Treglia, 313 F.3d at 721. Defendants carried this burden by offering undisputed facts to show that plaintiff was denied Discretionary Extended Leave because he did not meet the requirements under established company policy. To qualify for Discretionary Extended Leave, HHC employees "must have exemplary performance evaluations for their employment tenure." (Def. 56.1 ¶ 43.) "[T]his type of leave is discretionary," and employees "must meet the set forth

12

criteria to be considered for such leave." (Id. ¶ 43.)  It is undisputed that plaintiff did not have exemplary performance evaluations for his employment tenure.  His performance evaluation for July 2011 through July 2012 was "Need[ed] Improvement;" in October 2012 plaintiff had a counseling session "concerning his low productivity and the quality of his work as reflected on his performance evaluations;" and when plaintiff was reevaluated for the period from October to December 2012, he received only a "Satisfactory" rating.  (Id. ¶¶ 7-9.)  This is a "legitimate, non-retaliatory reason" to deny plaintiff the Discretionary Extended Leave.  Treglia, 313 F.3d at 721.

Because defendants have met their burden under McDonnell Douglas, "plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." Treglia, 313 F.3d at 721.  Plaintiff has not done so.  He does not dispute his performance ratings or the requirement of "exemplary performance evaluations" to qualify for Discretionary Extended Leave.  He only alleges, without pointing to any supporting facts, that he "believes that in practice employees with employment performance similar to his, who did not complain of discrimination, were granted this extended paid medical leave." (Pl. 56.1 ¶ 43.)  This threadbare allegation is insufficient to permit the conclusion that plaintiff's undisputed disqualification for Discretionary Extended Leave under company policy was pretextual.

B.   Discrimination Under the NYCHRL

Plaintiff also fails to allege sufficient facts to make out a prima facie case of discrimination under the NYCHRL. Assuming without deciding that plaintiff's COPD would qualify as a disability under the NYCHRL's more lenient standard, plaintiff does not plead any facts to support the conclusion that he suffered an adverse employment action due to his COPD. He was diagnosed with COPD in 2009. (Compl. ¶ 23.) He does not allege that he sought or was denied any accommodation for his COPD, and he does not allege any adverse employment action taken against him until the denial of Discretionary Extended Leave in 2013. Furthermore, as discussed in Part III.A, supra, even if plaintiff had made out a prima facie case that the denial of Discretionary Extended Leave was caused by disability discrimination, he fails to rebut defendant's facts showing a non-discriminatory reason for the denial. See Melman, 946 N.Y.S.2d at 30; Treglia, 313 F.3d at 721.

IV. CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is GRANTED.

The Clerk of Court is directed to terminate the motion at ECF No. 33 and to terminate this action.

SO ORDERED.

Dated:      New York, New York
            January 10, 2017

_____
KATHERINE B. FORREST
United States District Judge